IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

LESLIE TAYLOR,
CAROLINE NICHOLE COOKE,
JACOB COOKE, and
COLORADO CROSS-DISABILITY COALITION, a Colorado nonprofit organization,

      Plaintiffs,

v.

COLORADO DEPARTMENT OF HEALTH CARE POLICY AND FINANCING, and
SUE BIRCH, in her official capacity as Executive director of the COLORADO DEPARTMENT
      OF HEALTH CARE POLICY AND FINANCING,

      Defendants.

_____

## COMPLAINT
_____

Plaintiffs, Leslie Taylor, Caroline Nichole Cooke, Jacob Cooke and Colorado Cross-

Disability Coalition ("CCDC"), by and through undersigned counsel, hereby bring this

Complaint against the Colorado Department of Health Care Policy and Financing and Sue Birch,

in her official capacity as Executive Director of the Colorado Department of Health Care Policy

and Financing, for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12101, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §

794, *et seq.*

### Introduction

1.       On July 26, 1990, now more than twenty years ago, the ADA was passed,

establishing the most important civil rights law for people with disabilities in the nation's history.

2.      The ADA was passed to ensure people with disabilities are not discriminated against, in part, by government entities when they administer their programs, services and activities.

3.      In 1973, Section 504 was passed to ensure entities who receive federal financial assistance do not discriminate in the provision of their programs, services and activities.

4.      Title II of the ADA specifically applies to public entities, such as the Colorado Department of Health Care Policy and Financing (the "Department").

5.      As set forth more fully below, the Department has discriminated and acted unlawfully against Medicaid recipients who have disabilities who need an attendant to drive them and against their attendants who work for those disabled Medicaid recipients, in the administration of its Non-Emergent Medical Transportation ("NEMT") program.

6.      The Department has refused to assure there is feasible transportation service for disabled Medicaid recipients who need transportation service, who cannot drive and who require the assistance of attendants when they travel to medical appointments.

7.      Plaintiffs seek a court order compelling the Department to comply with the ADA and Section 504, monetary damages and the recovery of their reasonable attorneys' fees and costs.

## Jurisdiction and Venue

8.      This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 and 1343.

9.      Venue is proper within this District pursuant to 28 U.S.C. § 1391.

## Parties

10.     Leslie Taylor is and was at all times material to the facts in this case a resident of Colorado.  Ms. Taylor is substantially limited in the major life activity of walking and uses a motorized wheelchair for mobility.  Ms. Taylor is also substantially limited in the major life activity of seeing, which prevents her from driving.

11.     Ms. Taylor is a CCDC member.

12.     Ms. Taylor is eligible for Medicaid.

13.     Ms. Taylor is eligible to receive funded transportation services to and from her non-emergent medical appointments through the state's NEMT program.

14.     Plaintiff Caroline Nichole Cooke is and was at all times material to the facts in this case a resident of Colorado.

15.     Ms. Cooke was Ms. Taylor's personal care attendant during all times material to the facts in this case.

16.     Ms. Cooke remains Ms. Taylor's personal care attendant.

17.     Ms. Cooke is a CCDC member.

18.     Plaintiff Jacob Cooke was at all times material to the facts in this case a resident of Colorado.

19.     Mr. Cooke was Ms. Taylor's attendant at all times material to the facts in this case.

20.     Mr. Cooke is a CCDC member.

3

21.     Colorado Cross-Disability Coalition ("CCDC") is a Colorado non-profit corporation whose members are persons with disabilities and their non-disabled allies.

22.     Defendant Colorado Department of Health Care Policy and Financing (the "Department") is the single state agency designated to administer the Colorado Medical Assistance Program under Title XIX of the Social Security Act and Colorado statutes.

23.     The Department operates the state's NEMT program.

## Facts

24.     Plaintiff Taylor lives in Cahone, Colorado.

25.     Plaintiff Taylor has a disability that requires her to use a wheelchair.

26.     Plaintiff Taylor has a disability that prevents her from being able to drive.

27.     Plaintiff Taylor has a disability that requires her to need home health attendants to assist her in her home.

28.     Plaintiff Taylor has a disability that requires her to need home health attendants when she travels outside of her home.

29.     Plaintiff Taylor cannot drive.

30.     Defendants do not fund or provide a transportation service for eligible Medicaid recipients in Cahone, Colorado that is accessible to individuals who use wheelchairs.

31.     In Arapahoe, Adams, Douglas, Denver, Jefferson, Boulder, Broomfield and Weld counties, Defendants assure NEMT services through a contractor known as First Transit.

32.     Defendants do not provide or fund this service where Ms. Taylor resides in Montezuma County.

4

33.     In or about January of 2009, Plaintiff Taylor had a change in her medical needs.

34.     Because of her changed medical needs, Plaintiff Taylor needed to see doctors and other medical providers in Cortez, Colorado.

35.      In or about January of 2009, Plaintiff Taylor needed to see doctors and other medical providers in Farmington, New Mexico.

36.     Plaintiff Taylor does not have friends or family members who can drive her to these appointments.

37.     At times material to the facts in this case, Plaintiff Taylor has owned a Cadillac Catera.

38.     Plaintiff Taylor can be transported in her vehicle if someone assists her with transferring into the vehicle.

39.     Plaintiff Taylor is eligible for and uses Medicaid-funded home health care.

40.     Plaintiff Taylor has attendants who provide such care to her in home.

41.     Plaintiff Taylor's attendants are paid under a Medicaid program known as Colorado Consumer Directed Attendant Support Services ("CDASS").

42.     Plaintiff Taylor's attendants are paid an hourly rate to provide attendant care through the CDASS program.

43.     Plaintiff Taylor's attendants are CDASS employees.

44.     Plaintiff Taylor's attendants are not volunteers or family members.

45.     When Plaintiff Taylor travels to medical appointments, she requires the assistance of one of her attendants to drive her car.

5

46.     When Plaintiff Taylor travels to medical appointments, she requires the assistance of one of her attendants to provide personal care during the trip.

47.     When Plaintiff Taylor travels to medical appointments, she requires the assistance of one of her attendants to transfer her in and out of the vehicle.

48.     There is no transportation service that provides transportation services to Plaintiff Taylor where she lives.

49.     The Department does not fund or operate a non-emergent medical transportation brokerage program in Plaintiff Taylor's region.

50.     At all times material to the facts in this case, there was a transportation service operated by Dolores County, Colorado that has an accessible bus.

51.     That transportation service was operated by Dolores County Senior Services.

52.     That transportation service only provides service to individuals over the age of sixty.

53.     Plaintiff Taylor is younger than sixty and is not eligible for this service.

54.     Plaintiff Taylor made a request to her County caseworker to provide accessible transportation.

55.     Plaintiff Taylor's County caseworker denied the request.

56.     Plaintiff Taylor made a request to the County NEMT provider to provide accessible transportation services.

57.     Plaintiff Taylor's County NEMT provider denied the request.

58.     In February of 2009, Julie Reiskin wrote a letter on Plaintiff Taylor's behalf to

Defendants explaining Plaintiff Taylor's need for transportation to her non-emergent medical appointments

59.     In that letter, Ms. Reiskin explained the Department's obligations to assure non-emergent medical transportation.

60.     The rules and policies governing the CDASS program state that attendants cannot be paid for time spent driving the CDASS client.

61.     In the February, 2009 letter, Ms. Reiskin requested a reasonable modification of Defendants' policies, practices and procedures and suggested two options to assure Plaintiff Taylor could be transported to her non-emergent medical appointments:

a.      Defendants would allow Plaintiff Taylor to use the CDASS program to pay an attendant for time spent accompanying; or

b.      Defendants would pay Plaintiff Taylor a flat mileage rate for using her own car and would pay Plaintiff Taylor's attendant their lowest hourly rate paid under the CDASS program for time spent accompanying.

62.     Department employee Sue Williams responded that the Department would either pay for the services through the NEMT program or would pay the attendants through the CDASS program.

63.     Under the state's NEMT plan, a county may be a transportation provider or reimburse for NEMT services.  The regulation states as follows:

> The Department shall assure transportation to and from medically necessary
> services covered by the Colorado Medical Assistance Program for clients who
> have no other means of transportation. Payment will be made for the least

> expensive means suitable to the client's condition. The distance to be traveled, transportation and treatment facilities available and the physical condition and welfare of the client shall all determine the type of transportation service authorized.

10 CCR 2505-10:8.014.

64.     From February of 2009 until January of 2011, the Department did not provide Plaintiff Taylor with a definitive response to her request that the Department pay her attendants for the time spent going with Ms. Taylor to NEMT appointments.

65.     Beginning in January of 2009, Plaintiff Taylor's attendants began accompanying her for non-emergent medical appointments.

66.     Plaintiff Caroline Nichole Cooke accompanied Ms. Taylor during the non-emergent medical appointments.

67.     Plaintiff Jacob Cooke accompanied Ms. Taylor during the non-emergent medical appointments.

68.     During the non-emergent medical appointment trips, Plaintiff Taylor's attendants drove Ms. Taylor to and from the appointments.

69.     During the non-emergent medical appointment trips, Plaintiff Taylor's attendants assisted Ms. Taylor with transferring in and out of the car.

70.     During the non-emergent medical appointment trips, Plaintiff Taylor's attendants assisted her with care needs.

71.     Plaintiff Taylor could not have attended these non-emergent medical appointments without the assistance of her attendants.

72.     In an e-mail message to Julie Reiskin dated March 17, 2009, Sue Williamson

stated:

> I'm sorry for the misunderstanding. What I am proposing is that Leslie get
> reimbursed for her mileage/gas and pay that to someone to drive her to her
> appointments - it can be the same person that serves as her attendant CDASS
> hours will be used when Leslie needs help in and out of the car and during her
> visits at the provider's office. This is what I thought we had agreed to. We don't
> adjust CDASS allocations for transportation needs per se, but can adjust the hours
> for the personal care needs.

73.     Ms. Reiskin responded on March 18, 2009:

> That is fine if the aides get paid out of another pot. She had been paying out of
> cdass but we can have them paid by the county if
> 1. The hourly rate is no less including overtime as there are trips that are 10-16 hour days
> 2. That they do not have to wait more than 2 weeks for pay from date of submission.
> Please provide a form and billing instructions and tell us how you want to handle the
> transportation that has been provided since we made this request.

74.     Ms. Williamson responded, "Thanks. I'll work with Renee on the piece with the

county."

75.     Plaintiff Taylor and Ms. Reiskin developed a form for reimbursement of mileage

for Ms. Taylor for use of her vehicle and for reimbursement for the attendants for the time Ms.

Taylor's attendants spent accompanying her to her non-emergent medical appointments.

76.     Plaintiff Taylor submitted forms for reimbursement for the non-emergent medical

appointments she made beginning in January 2009.

77.     Plaintiff Taylor requested reimbursement for mileage and requested

reimbursement of wages for her attendants.

78.     The Dolores County Department of Social Services sent checks to Plaintiff Taylor

to pay for mileage.

79.     Dolores County used the state's mileage rate to reimburse Plaintiff Taylor for the mileage.

80.     Until December 23, 2009 Dolores County did not issue payment for the time Plaintiff Taylor's attendants spent accompanying her.

81.     The Department did not authorize payment to Plaintiff Taylor's attendants under the CDASS program for the time her attendants spent accompanying Plaintiff Taylor to non-emergent medical appointments.

82.     The Department refused to reimburse Plaintiff Taylor's attendants under the CDASS program for the time her attendants spent accompanying Plaintiff Taylor to non-emergent medical appointments.

83.     On December 23, 2009 Dolores County issue a check to Plaintiff Taylor in the amount of $1,107.00 for "Med Trans - Attendants."

84.     Dolores County did not provide Plaintiff Taylor with any further documentation explaining the check.

85.     A hearing on the NEMT case was scheduled in the state office of administrative court on December 28, 2009.

86.     On December 24, 2009 Department Transportation Coordinator, Renee Robinson, filed a Motion to Dismiss in the administrative action stating the following: "The client has been issued a check for her attendants travel hours. I have attached a copy of the check in the amount of $1107.00 from Delores [sic] County."

87.     On January 13, 2010 the Department, represented by counsel, filed another Motion to Dismiss the administrative appeal on the basis that Defendants had "reimbursed Petitioner for non-emergent medical transportation attendant care and mileage to and from medical appointments.  Check number 004172 covers mileage reimbursement. Exhibit 1. Check number 001557 covers attendant reimbursement. Exhibit 2."

88.     On January 18, 2010, represented by counsel, Plaintiff Taylor returned the check to Defendants citing the following reasons:

  a. The amount of the check was unsubstantiated;

  b. No information or instructions were provided regarding state and federal tax rules; and

  c. The check was made payable to Plaintiff Taylor, not the individual attendants.

89.     NEMT-eligible Medicaid recipients who do not have disabilities that require an attendant to drive them to medical appointments are not required to disburse payments to employees.

90.     NEMT-eligible Medicaid recipients who do not have disabilities that require an attendant to drive them to medical appointments are not required to pay the wages of their drivers.

91.     On information and belief, if Plaintiff Taylor had cashed the check and paid her attendants for their time, this conduct would have been unlawful.

92.     Defendants never reissued payment for the time the attendants spent driving

Plaintiff Taylor to her non-emergent medical appointments.

93.     Plaintiff Taylor continued attending non-emergent medical appointments.

94.     Plaintiff Taylor's attendants accompanied her to the appointments.

95.     Plaintiff Taylor continued submitting billing statements for both mileage and attendant time.  .

96.     Defendants denied Plaintiff Taylor's request for an individual modification of  its CDASS policy to allow for compensation for her attendants for driving her to NEMT appointments.

97.     The Department filed a third Motion to Dismiss on April 20, 2010.

98.     In that motion, for the first time, the Department articulated a new interpretation of its NEMT rule.  It said the following: "Petitioner's NEMT is reimbursed on a per mile basis. This reimbursement is the recipient's compensation for all expenses of NEMT including gas, mileage and driver."

99.     Plaintiff Taylor lives on a fixed income and cannot afford to pay her attendants for the time spent driving and for gas, wear-and-tear on her vehicle, maintenance and insurance for this amount.

100.    Defendants' new rule is not a reasonable modification to its policies, practices, and procedures under the ADA.

101.    The state's state plan regarding the NEMT program states the following:

METHODS OF ASSURING TRANSPORTATION

The Colorado Medical Assistance Program provides non-emergent medical transportation

(NEMT) as an administrative service and administrative expense.

The state-designated entity shall assure that necessary NEMT services covered by the Colorado Medical Assistance Program for clients who have no other means of transportation are provided. The state-designated entity can be either county departments of human/social services or a designated broker. Payment will be made for the least expensive transportation suitable to the client's condition. The distance to be traveled, transportation methods available, treatment facilities available, and the physical condition and welfare of the client shall all determine the type of N EMT authorized. The type of transportation available may vary by region because of rural and urban conditions.

Reimbursable NEMT methods shall include personal vehicle, ambulance, taxi, mobility vehicle, wheelchair van, bus, train, air, and other forms of public and private conveyance Reimbursement for non-brokered NEMT shall be the lower of submitted charges or fee schedule rate as determined by the Department of Health Care Policy and Financing. Brokered NEMT, which is used only in non-emergency circumstances, shall be reimbursed through negotiated contracts based on fee-for-service rates and expenditures.

Except as otherwise noted in the State Plan, state-developed fee schedule rates are the same for both governmental and private providers. Reimbursement rates can be found on the official Web site of the Department of Health Care Policy and Financing at www.colorado.gov/hcpt:

Clients are made aware of NEMT services through the following methods:
• informational packet mailed to all newly enrolled Medicaid clients
• EPSDT outreach coordinators (for children and families)
• Official Web site of the Department of Health Care Policy and Financing
• Enrollment broker
• Customer Service Contact Center
• County departments of human and social services
• Transportation broker via outreach to Medicaid providers in the service area

Clients residing in counties covered by the NEMT broker may contact the broker by calling a toll-free telephone number.

102.    Having the Department authorize payment for the attendants' time is a reasonable modification of the state's NEMT plan to accommodate Plaintiff Taylor's disability and need for attendants during her NEMT trips, including driving time, under these circumstances.

103.    It is discriminatory to require an individual with a disability who requires attendants to drive her to medical appointments to pay for maintenance of her vehicle, insurance, gasoline and to pay drivers when other NEMT-eligible Medicaid recipients who can drive would receive full mileage reimbursement for maintenance of her vehicle, insurance, and gasoline.

104.    It is discriminatory to require a Medicaid recipient who is disabled and needs her attendants to drive to be responsible for paying wages to her attendant drivers.

105.    It is discriminatory to require a Medicaid recipient who is disabled and needs her attendants to drive to pay her attendant drivers less than minimum wage after paying for maintenance of her vehicle, insurance, and gasoline.

106.    It is discriminatory to require a Medicaid recipient who is disabled and needs her attendants to drive to be required to make the decision regarding how much to pay attendant drivers.

107.    In its Motion to Dismiss (on Remand), filed April 20, 2010 in the state Office of Administrative Courts, the Department argued that the CDASS program regulations prohibit the Department from authorizing payment to Plaintiff Taylor's attendants under that program.  It said:

9.  Personal Care Services are separate and apart from NEMT, and with regard to accompaniment, the regulations state as follows:

Q.  ACCOMPANYING
1. INCLUSIONS:
Accompanying the client to medical appointments, banking errands, basic household errands, clothes shopping and grocery shopping to the extent necessary and as specified on the care plan is considered unskilled, when all the care that is provided by the personal care staff in  relation to the trip is unskilled personal care,

14

as described in these regulations.  Accompanying the client to other services is also permissible as specified on the care plan, to the extent of time that the client would otherwise receive personal care services in the home.

Personal care for the purpose of accompanying the client shall only be authorized when <u>a personal care provider is needed during the trip to</u> provide one or more other unskilled personal care services listed in the Section.  Accompanying the client primarily to provide companionship is not a covered benefit.

2. EXCLUSIONS:
Accompanying·is considered skilled when any of the tasks performed in conjunction with the accompanying are skilled tasks.  <u>Accompanying does not include transporting</u> the client.

10 C.C.R. 2505-10, § 8.489.30.  (Emphasis in original.)

108.    It is a reasonable modification of Defendants' CDASS program rules for it to authorize payment to Plaintiff Taylor's attendants under the CDASS program because of her disability and need for attendants to accompany her to non-emergent medical appointments, including authorizing payment for driving time.

109.    Defendants authorize payment for NEMT services for Medicaid clients who do not have a disability that requires them to use attendants when they go the non-emergent medical appointments.

110.    In NEMT cases in which a Medicaid client does not need to pay an attendant to drive them to NEMT appointments, e.g., the brokered NEMT service operated by First Transit in Denver county, all services are paid for by the Department, including payment of the driver.

111.    Because Defendants do not provide the same service to Plaintiff Taylor because of her disability and need for attendant drivers, Defendants discriminate against

Plaintiff Taylor.

112.    Because Defendants' NEMT policy prohibits individuals with disabilities who need attendants to drive them to medical appointments from paying the attendants a reasonable wage, it discriminates against such individuals.

113.    Because Defendants' policy will apply to any Medicaid recipient with a disability who requires attendant care while traveling to NEMT appointments, Defendants discriminate against such people.

114.    Plaintiffs and other individuals who receive Medicaid benefits who require attendant care while traveling to NEMT appointments will be harmed if Defendants do not immediately adopt and implement policies, practices and procedures to ensure that all individuals eligible for NEMT services receive equal access to those services.

115.    Plaintiff Taylor continues to need to attend non-emergent medical appointment.

116.    Plaintiff Taylor continues to need attendants to accompany her when she goes to non-emergent medical appointments.

117.    Plaintiff continues to need attendants to drive her to non-emergent medical appointments.

118.    Plaintiff Taylor has provided some compensation to her attendants for their time driving her to non-emergent medical appointments.

119.    Plaintiff Taylor cannot afford to pay her attendants their hourly wages for their time driving her to non-emergent medical appointments.

120.   Plaintiff Leslie Taylor has been harmed and continues to be harmed by Defendants' discrimination.

121.   Plaintiff Caroline Nichole Cooke has been harmed and continues to be harmed by Defendants' discrimination.

122.   Plaintiff Jacob Cooke has been harmed by Defendants' discrimination.

123.   Plaintiffs' attendants will not continue to drive Ms. Taylor to her non-emergent medical appointments without just hourly compensation.

124.   CCDC's mission statement is the following: "CCDC advocates for social justice for people with all types of disabilities."

125.   CCDC's purpose is to promote independence, self-reliance, and full participation for people with all types of disabilities, and to combat discrimination against individuals with disabilities, through advocacy, education, research and training.  As a part of that purpose, CCDC seeks to ensure that individuals who are use wheelchairs have access to -- and do not encounter discrimination in -- participating in government services, including the state's NEMT program.

126.   CCDC engages in extensive outreach as well as advocacy and educational efforts to promote access for and combat discrimination against people with disabilities.  This effort and this purpose have been and continue to be adversely affected by Defendants' violations of the ADA and Section 504.

127.   The Department's actions have caused and continue to cause distinct, palpable and perceptible injury to CCDC.  Those injuries include, but are not limited to, those

described herein.

128.   CCDC has devoted resources, which could have been devoted to its other outreach, advocacy, and educational efforts, to communicating with Defendants in an attempt to secure accessible services, activities and programs.

129.   CCDC has devoted resources, which could have been devoted to its other outreach, advocacy, and educational efforts, to educate members and others who have been injured by Defendants' discrimination.

130.   The Department's discrimination has been and continues to be a barrier to the full participation of persons with disabilities and, therefore, frustrates CCDC's ability to achieve full inclusion for persons with disabilities.  For example:

a.   Defendants' discrimination, in and of itself, denies equal access to Defendants' NEMT program to people with disabilities who require attendant care; and

b.   Defendants' actions send the message that such discrimination continues to be acceptable at this time.

131.   Defendants' discrimination has required and continues to require CCDC to make a greater effort -- and to allocate significant resources -- to educate the public that such discrimination is wrong and otherwise to counteract the adverse impact of such discrimination.  This perceptibly impairs CCDC's counseling, advocacy, educational, and training missions.

132.   CCDC also has devoted and continues to devote resources -- including but not

18

limited to those devoted to the present lawsuit -- to identifying and counteracting the sources

of discrimination in the community, including that of Defendants.

133.   CCDC's injuries -- including, without limitation, those described herein -- are

traceable to Defendant' discriminatory conduct alleged in this Complaint and will be

redressed by the relief requested in it.

134.   CCDC's members include Medicaid recipients who require attendant care

while traveling to NEMT appointments.

135.   CCDC's members have been injured and will continue to be injured by

Defendants' discrimination described above.

136.   The elimination of discrimination, such as that of Defendants, is at the core of

CCDC's organization purpose.

137.   The participation of individual CCDC members in the lawsuit is not required

either to resolve the claims at issue or to formulate relief.

### First Claim for Relief
(Violations of the ADA)

138.   Plaintiffs reallege and incorporate by reference the remainder of the

allegations set forth in this Complaint as fully set forth herein.

139.   Title II of the ADA provides in pertinent part: "[N]o qualified individual with

a disability shall, by reason of such disability, be excluded from participation in or be denied

the benefits of the services, programs, or activities of a public entity, or be subject to

discrimination by any such entity."

140.    Defendant Colorado Department of Health Care Policy and Financing is a public entity within the meaning of the ADA.

141.    Plaintiff Taylor is a qualified individual with a disability. *See* 42 U.S.C. § 12131(2).

142.    "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

143.    It was reasonable to allow authorization of payment to Plaintiff Taylor's attendants under the NEMT program.

144.    It was reasonable to modify the state's CDASS rules to authorize payments to Plaintiff Taylor's attendants.

145.    The Department cannot prove it would fundamentally alter the state's NEMT rules to authorize payments to Ms. Taylor's attendants under the NEMT program.

146.    The Department cannot prove it would fundamentally alter the state's CDASS program to modify the rule to authorize payment to Plaintiff Taylor's attendants for all of their time spent accompanying Plaintiff Taylor to her NEMT appointments.

147.    "A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130.

20

148.    Plaintiff Caroline Nichole Cooke is an individual with a relationship or association with an individual with a disability who has been harmed by Defendants' unlawful conduct.

149.    Plaintiff Jacob Cooke is an individual with a relationship or association with an individual with a disability who has been harmed by Defendants' unlawful conduct.

150.    CCDC is an entity with a relationship or association with an individual with a disability and has been harmed by Defendants' unlawful conduct.

151.    CCDC also has members who are qualified individuals with disabilities for Defendants' NEMT program.

152.    Defendants have discriminated against Plaintiff Taylor on the basis of her disability.

153.    Plaintiffs have been, and will continue to be, injured, damaged and aggrieved by Defendants' unlawful conduct.

154.    Plaintiff Taylor and other CCDC members who are Medicaid recipients who require attendant care while traveling to NEMT appointments are likely to encounter the same unlawful policies and practices.

155.    Plaintiffs Caroline Nichole Cooke and Jacob Cooke and other attendants who work for Medicaid recipients with disabilities traveling to NEMT appointments will be harmed by Defendants' unlawful conduct.

156.    Plaintiffs Caroline Nichole Cooke and Jacob Cooke and other attendants who work for Medicaid recipients with disabilities traveling to NEMT appointments are likely to

encounter the same discriminatory policies and practices.

157.    In the absence of the injunction requested herein, Defendants will continue to engage in unlawful conduct in violation of Title II of the ADA and its implementing regulations.

158.    Defendants and their agents acted intentionally and with a reckless disregard for Plaintiffs' rights.

159.    Plaintiffs have been injured, damaged and aggrieved by and will continue to be injured, damaged and aggrieved by Defendants' unlawful conduct.

## Second Claim for Relief
(Violations of Section 504)

160.    Plaintiffs reallege and incorporate by reference the remainder of the allegations set forth in this Complaint as fully set forth herein.

161.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

162.    Defendant Colorado Department of Health Care Policy and Financing receives federal financial assistance.

163.    In addition, Defendants' Medicaid program constitutes the operation of "a department, agency, special purpose district, or other instrumentality of a State or of a local government[.]" 29 U.S.C. § 794(b)(1)(A).

164.     Plaintiff Taylor is a qualified individual with a disability and has been subjected to discrimination by Defendants, as described in this Complaint, solely on the basis of her disability.

165.     Such discrimination includes the failure to provide NEMT services.

166.     Plaintiffs Caroline Nichole Cooke and Jacob Cooke are individuals with a relationship or association with an individual with a disability and have been harmed by Defendants' unlawful conduct.

167.     CCDC is an entity with a relationship or association with an individual with a disability and have been harmed by Defendants' unlawful conduct.

168.     CCDC members are individuals with disabilities, and are qualified to participate in the services, programs, activities and benefits of Defendants' Medicaid program within the meaning of Section 504.

169.     Defendants and their agents acted intentionally and with a reckless disregard for Plaintiffs' civil rights.

170.     Plaintiffs have been injured, damaged and aggrieved by and will continue to be injured, damaged and aggrieved by Defendants' unlawful conduct.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully pray:

That this Court assume jurisdiction;

That this Court issue an Order declaring Defendants to be in violation of Title II of the ADA and Section 504;

That this Court issue an injunction ordering Defendants to modify the NEMT and/or CDASS programs to reimburse time spent by attendants accompanying Medicaid recipients with disabilities in the NEMT program;

That this Court awards Plaintiffs' damages;

That this Court award Plaintiffs their reasonable attorneys' fees and costs; and

That this Court award such additional or alternative relief as may be just, proper and equitable.

JURY DEMAND: Plaintiffs request this case be tried to the Court.

Dated: February 3, 2012                    Respectfully Submitted,

                                           */s/ Kevin W. Williams*
                                           Kevin W. Williams
                                           Andrew C. Montoya
                                           Colorado Cross-Disability Coalition
                                           655 Broadway, Suite 775
                                           Denver, Colorado 80203
                                           Phone: (303) 839-1775
                                           Facsimile: (303) 839-1782
                                           E-mail: kwilliams@ccdconline.org
                                           E-mail: amontoya@ccdconline.org
                                           Attorneys for Plaintiffs

Address of Plaintiff Leslie Taylor:

PO Box 126
Cahone, CO 81320

Address of Plaintiff Caroline Nichole Cooke:

14041-A County Road P
Cahone, CO 81320

Address of Plaintiff Jacob Cooke:

361 Sacajawea Court
Ellsworth Air Force Base
Rapid City, SD 57706

Address of Plaintiff Colorado Cross-Disability Coalition:

655 Broadway, Suite 775
Denver, CO 80203