**TH IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-00300-PAB-KMT

LESLIE TAYLOR,
CAROLINE NICHOLE COOKE,
JACOB COOKE, and
COLORADO CROSS-DISABILITY COALITION, a Colorado nonprofit organization,

Plaintiffs,

v.

COLORADO DEPARTMENT OF HEALTH CARE POLICY AND FINANCING, and SUE
BIRCH, in her official capacity as Executive Director of the COLORADO DEPARTMENT OF
HEALTH CARE POLICY AND FINANCING,

Defendants.

---

### THE STATE'S RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS

Defendants Colorado Department of Health Care Policy and Financing (the

"Department") and Sue Birch, in her official capacity as Executive Director of the Department

(the "Executive Director," and collectively with the Department, the "State"), hereby submit

their Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss requesting that this Court dismiss

Plaintiffs' Complaint.  In support thereof, the State states the following:

#### INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs' lawsuit is the continuation of a case that has been winding its way through

administrative tribunals and state courts in Colorado for the better part of three years.  It involves

the state Non-Emergency Medical Transportation ("NEMT") program, which is a Medicaid

administrative service intended to provide transportation for Medicaid recipients who lack other

means of transportation to travel to and from non-emergency medical appointments covered by

Medicaid.  In the most populated areas of the state, the Department contracts with a private

NEMT brokerage vendor to provide these services and pays them a fixed monthly fee.  This

compensation is intended to cover all NEMT expenses, whether by public or private conveyance,

including depreciation, gas, insurance and driver costs.  In the less populated areas of the state, it

often is not possible to find a suitable vendor, so the recipients are directly reimbursed on a per-

mile basis (between $0.37 and $0.39 per mile during the times relevant to this Complaint).  As is

the case with the brokered transportation payments, the reimbursement amount is intended to

cover all NEMT costs.

Plaintiff Leslie Taylor ("Taylor") falls in this latter group of recipients.  There is no

NEMT vendor in her place of residence (Cahone, Colorado), so the Department, through its

agent (the county), reimburses her directly for her mileage costs.  The problem, Taylor claims, is

that due to various disabilities, she requires an attendant to drive her to and from her medical

appointments and to provide various care services (getting in and out of the car, dressing and

undressing, etc.).  The Department pays these attendants the appropriate hourly rate for the care

services actually provided (both at home and at the medical appointments) pursuant to Colorado

Medicaid regulations, but it does not pay them an hourly wage for the time spent traveling to and

from the appointments, which is intended to be covered by the mileage reimbursement.  The

Department believes that paying an hourly wage for travel time on top of the mileage fees would

be a classic case of "double dipping."

In July 2009, Taylor filed an administrative appeal with the Colorado Office of

Administrative Courts seeking to compel the Department to pay her caregivers the hourly wage

for traveling to and from appointments.  She prevailed in front of an Administrative Law Judge,

2

but this determination was overturned by the Department in a final agency decision. Taylor then proceeded to state court in a lawsuit seeking judicial review of that decision, and asserting ADA and § 1983 claims. The court bifurcated the judicial review issue from the remaining claims and determined that the Department was not violating applicable Medicaid statutes and regulations by refusing to pay attendants an hourly wage for travel time on top of the mileage reimbursements. Before the state court could address her other claims, Taylor and the Department agreed to dismiss her lawsuit without prejudice.

Now she has come before this Court, joined by two of her caregivers (Caroline Nichole Cooke and Jacob Cooke (collectively, the "Cookes")) and the Colorado Cross Disability Coalition ("CCDC," and collectively with Taylor and the Cookes, "Plaintiffs"), a disability advocacy organization. Plaintiffs allege that the Department's failure to pay Taylor's attendants an hourly wage on top of the mileage-based fee constitutes disability-based discrimination in violation of Title II of the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act. Plaintiffs' Complaint should be dismissed for the following reasons.

First, all claims against the Department, and all claims for retrospective damages against the Executive Director, are barred by the Eleventh Amendment. Therefore, this Court lacks jurisdiction to adjudicate them, and they should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)").

Second, Plaintiffs' Complaint fails the heightened plausibility pleading standard recently articulated by the Supreme Court in its now-famous *Twombly* and *Iqbal* decisions for a number of reasons, and thus it should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Most importantly, one "essential" element of an ADA Title II

claim is that the plaintiff must be denied access to a government program, service or facility. Yet no such allegation is made in this case – quite the contrary, in fact. Plaintiffs repeatedly allege throughout their Complaint that Taylor's attendants have accompanied her to her medical appointments for more than three years. It is true that the Complaint contains a single conclusory allegation threatening that these attendants will cease accompanying her at some indeterminate point in the future, but Plaintiffs are silent as to why these individuals will abruptly stop providing the same service that they have undertaken since at least January 2009. That "naked assertion without factual enhancement" is not the sort of well-pled fact necessary for the Complaint to survive the *Twombly*/*Iqbal* plausibility analysis.

Furthermore, even if the conclusory warning that Taylor's current caregivers will stop accompanying her (as they have for more than three years) for some unknown reason at some indeterminate future time is deemed to be plausible, Plaintiffs still do not adequately plead an ADA discrimination claim. The Supreme Court has long been clear that the actual insufficiency of a Medicaid benefit for a specific disabled individual does not constitute actionable discrimination, even when the insufficiency stems from the individual's disability. Here, the Department provides the same NEMT compensation for Taylor that it does for anyone else in the state. The implication that this amount is insufficient for her personal, specific needs does not constitute discrimination under the ADA or Rehabilitation Act under settled law.

Plaintiffs also fail to allege sufficient facts to establish that any hypothetical denial of access to the Colorado NEMT program is "by reason" of Taylor's disability, which is the third essential element of an ADA claim. Indeed, it seems clear on the face of the Complaint that the two main impediments for Taylor are (1) her geographic isolation, and (2) her purported inability

4

to find an NEMT provider who will perform the necessary transportation service at the rate the Department has authorized.  Yet neither of these has anything to do with Taylor's disability.

Finally, based on the allegations in the Complaint, it appears that the Cookes lack the requisite Article III injury-in-fact to pursue their claims.  Either they will continue accompanying Taylor, in which case *no one* will have a cognizable ADA claim, or they will not (however speculative this outcome is), in which case the failure to pay them an additional hourly wage cannot cause them injury because they will not be entitled to *any* compensation.  The Cookes thus lack standing, and they should be dismissed from the lawsuit pursuant to Rule 12(b)(1).

### RELEVANT ALLEGED FACTS

In order for this Court to resolve the Motion, the following facts may be relevant:

- The Department is a Colorado state agency.[1]  (Complt. at ¶ 22.)

- The Department operates the state NEMT administrative service (*Id.* at ¶ 23), which is a Medicaid program intended to provide non-emergency medical transportation to recipients who have no other means of traveling to and from Medicaid-covered medical appointments.  (*Id.* at ¶ 101.)

- The Department does not have a brokered arrangement with any third-party vendors to provide NEMT services in Cahone, Colorado, where Taylor lives.  (*Id.* at ¶ 48.)

- The Department pays such Medicaid recipients who do not have access to brokered NEMT services or public conveyances a standard mileage reimbursement for distances traveled to covered appointments.  (*Id.* at ¶¶ 98, 101, 103-105.)

- Taylor has attended non-emergent medical appointments since at least January 2009.  (*Id.* at ¶ 65.)

---

[1] The Complaint is devoid of any factual allegations concerning the identity and status of the Executive Director.  However, based on the prefatory language in the Complaint, the State understands that Ms. Birch is being sued in her official capacity as Executive Director of the Department.  (Complt. at p. 1.)

- Taylor received the state NEMT mileage reimbursement for travel to those appointments. (*Id.* at ¶¶ 78-79.)

- Taylor has been accompanied by attendants while traveling to and from these medical appointments. (*Id.* at ¶¶ 65-71, 94.)

- Taylor has compensated her attendants for accompanying her to these medical appointments. (*Id.* at ¶ 118.)

- There is no allegation that Taylor has missed any medical appointments from January 2009 to the time of the filing of the Complaint as a result of the Department's decision to reimburse recipients for non-brokered NEMT transportation on a per-mile basis.

- There is no alleged change in circumstance to explain why the prior arrangement whereby Taylor attended medical appointments and received a mileage reimbursement and compensated her attendants with those funds will be impossible in the future.

## STANDARD OF REVIEW

With respect to the State's Rule 12(b)(1) defense, a moving party attacking subject matter jurisdiction at the dismissal stage is not confined to the allegations of a complaint, and he or she may present evidence "to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003) (internal citation and quotations omitted); *accord Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004).

The standard of review is different with respect to the State's Rule 12(b)(6) defense. "[T]o withstand a motion to dismiss [under Rule 12(b)(6)], a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief *that is plausible on its face*.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")) (emphasis added); *see also Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ("*Iqbal*") (declaring that legal conclusions and bald assertions are not entitled to be accepted as true). "Mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer ***specific factual allegations*** to support each claim." *Kansas Penn Gaming*, 656 F.3d at 1214 (*quoting Twombly*, 550 U.S. at 555) (emphasis added). To cross the line of plausibility, a plaintiff's factual allegations must be sufficient to "raise a right to relief above the speculative level." *Kansas Penn Gaming*, 656 F.3d at 1214-15 (*quoting Twombly*, 550 U.S. at 555 *and citing Robbins v. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

## ARGUMENT

**I.**   **The Eleventh Amendment Strips this Court of Jurisdiction over All Claims against the Department and All Other Claims for Money Damages, and those Claims Should Be Dismissed Pursuant to Rule 12(b)(1).**

The Eleventh Amendment provides in relevant part that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State…." U.S. CONST. amend. XI. Federal authorities interpret the Eleventh Amendment generally to prevent both states and their state agencies from being sued by a private citizen in federal court. *See, e.g., ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187-88 (10th Cir. 1998) (*citing Cory v. White*, 457 U.S. 85, 90 (1982)), *abrogated on other grounds*; *V-1 Oil Co. v. Utah St. Dept. of Public Safety*, 131 F.3d 1415, 1420 (10th Cir. 1997); *Neiberger v. Hawkins*, 70 F. Supp. 2d 1177, 1187 (D. Colo. 1999). This fundamental principle applies equally to suits at law (for money damages) and equity (for injunctive relief). *See, e.g., V-1 Oil*, 131 F.3d at 1420.

Furthermore, although the *Ex parte Young* legal fiction allows private citizens to sue state officials acting in their official capacity to enjoin them from enforcing an unconstitutional state law, s*ee, e.g., Thompson v. Colorado*, 278 F.3d 1020, 1025 n. 2 (10th Cir. 2001), *overruled on other grounds*, the doctrine does not extend to claims for money damages.  "[W]hen a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the 'real party in interest' is the state, and the suit is barred by the Eleventh Amendment."  *ANR Pipeline*, 150 F.3d at 1188 (*citing Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

There is no dispute that the Department is a state agency – indeed, Plaintiffs' Complaint characterizes it as such.  (Complt. at ¶ 22.)  Nor is there any dispute that Plaintiffs are seeking, in part, money damages for past alleged wrongdoing.  (Complt. at p. 24 (third prayer for relief).)  Therefore, pursuant to the Eleventh Amendment, this Court must dismiss all claims against the Department and all claims for money damages against the Executive Director.

Plaintiffs may counter this argument by asserting that Congress has abrogated any Eleventh Amendment immunity in the ADA context.  It is true, of course, that the ADA purports to strip this constitutional immunity from the states.  *See* 42 U.S.C. § 12202.  Yet that is not the end of the analysis.  The Supreme Court has made clear on numerous occasions that this statutory abrogation merely begs a more fundamental overarching question:  When – and to what extent – does Congress have the authority to abrogate a state's Eleventh Amendment immunity in the ADA context?  After all, a statutory provision purporting to remove that immunity is meaningless if Congress lacks the constitutional authority to effect that intent.  *See, e.g., Tennessee v. Lane*, 541 U.S. 509, 518 (2004).

The ADA abrogation analysis is a multi-step one, and it often hinges on the precise nature of the claims being asserted. *See U.S. v. Georgia*, 546 U.S. 151, 159 (2006) (instructing lower federal courts to evaluate whether Eleventh Amendment immunity has been validly abrogated by the ADA on a "claim-by-claim basis").   A recent – and controlling – decision from the Tenth Circuit demonstrates the highly technical nature of this inquiry.

In *Guttman v. Khalsa*, a physician with a history of depression and post-traumatic stress disorder brought an ADA lawsuit in federal court claiming that he was the subject of disability-related discrimination by the state of New Mexico, which suspended his medical license as a result of an investigation of his conduct.  *See* 669 F.3d 1101, 1106-07 (10th Cir. 2012).  The state defendant moved to dismiss the lawsuit on Eleventh Amendment grounds; the plaintiff countered that this immunity had been stripped by the ADA.  The court succinctly explained the applicable analysis while rejecting the plaintiff's abrogation argument:

> To resolve the question [of whether Eleventh Amendment immunity is properly abrogated by the ADA], we apply the Court's three-step analysis from *United States v. Georgia*.  That analysis requires us to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 1113 (block quotation and citations omitted).  The court then determined that the alleged wrongful conduct at issue (*i.e.*, the suspension and subsequent revocation of the plaintiff's medical license) did not constitute a Fourteenth Amendment procedural due process or equal protection violation, and that the right of disabled persons to be licensed in their chosen

profession did not invoke any overarching constitutional concerns focused on by Congress when enacting the ADA. *Id.*

The same result is warranted here. The alleged wrongful conduct addressed by the Complaint is the Department's purported "discrimination" against disabled Medicaid recipients vis-à-vis non-disabled recipients when it pays the same NEMT transportation rates for both types of individuals, regardless of any extra costs incurred by the former group in traveling to and from medical appointments. First, with respect to the second step of the *Georgia/Guttman* inquiry (*i.e.*, whether the allegedly wrongful conduct constitutes an independent Fourteenth Amendment claim), there is no suggestion in the Complaint that the Department's administration of its NEMT program constitutes any stand-alone constitutional violation; indeed, it is hard to imagine any theory whereby the Department's decision not to "double pay" caregivers for accompanying Taylor to her medical appointments would be a constitutional violation. So the second step of the *Georgia/Guttman* ADA abrogation analysis will not apply. *See Georgia*, 546 U.S. at 159; *Guttman*, 669 F.3d at 1113-16.

The third step in the *Georgia/Guttman* analysis – whether a non-constitutional alleged ADA violation nonetheless is related to a Congressional effort to indirectly address a longstanding history of constitutional violations – is more detailed on its face. It requires a court to consider (1) the nature and extent of the constitutional rights indirectly at issue (if any are), (2) the extent to which Congress's remedial statute was passed in response to a history of violations of those rights, and (3) whether the statute at issue is "congruent and proportional" to these violations. *See City of Boerne v. Flores*, 521 U.S. 507, 529-36 (1997); *Guttman*, 669 F.3d at 1117. *Georgia* and *Guttman* require that the inquiry focus on the narrow and specific claim at

issue, and not some broader or more abstract concept.  *See* 546 U.S. at 159; 669 F.3d at 1117. The claim in this case involves the purported right of disabled persons to access government welfare programs – specifically including Medicaid – in a manner that is not more burdensome than it would be for non-disabled persons.  While this may be a laudable and well-intentioned goal as a policy matter, it is difficult to see how the intent of Congress to increase or ease such access is even remotely related to any overarching specific constitutional right or history of constitutional violations.  *Cf. Lane*, 541 U.S. at 527 (noting that the disabled plaintiffs effectively were being denied access to the courts, which invoked numerous constitutional protections).

Therefore, because Plaintiffs' claims do not directly or indirectly invoke any constitutional rights or history of constitutional violations, the foregoing analysis leads to the inescapable conclusion that Congress lacked the authority to abrogate the State's Eleventh Amendment immunity in this case.  All of their claims against the Department, and all of the money damages claims against the Executive Director,[2] should be dismissed accordingly pursuant to Rule 12(b)(1).[3]  *See Guttman*, 669 F.3d at 1113-25 (similarly concluding that Congress lacked the authority to abrogate New Mexico's Eleventh Amendment immunity).

---

[2] Furthermore, the Tenth Circuit has long been clear that money damages claims under Title II against a state agency are barred by the Eleventh Amendment even setting aside the abrogation analysis.  *See Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 866 (10th Cir. 2003), *abrogated on other grounds*; *Nasious v. Colorado - Office of Governor Ritter*, 2011 WL 2601015, at *4 (D. Colo. June 29, 2011).

[3] In other words, the only claims that should be permitted to proceed under the Eleventh Amendment are the injunctive and declaratory claims against the Executive Director in her official capacity.

**II.    The Facts Alleged by Plaintiff Do Not Present a Plausible Claim for Relief and the Complaint Should Be Dismissed in Its Entirety Pursuant to Rule 12(b)(6).**

As noted above, "to withstand a motion to dismiss [under Rule 12(b)(6)], a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief *that is plausible on its face*.'" *Kansas Penn Gaming*, 656 F.3d at 1214 (*quoting Twombly*, 550 U.S. at 570) (emphasis added).  This "plausibility" requirement, which the Supreme Court announced in *Twombly* in 2007 and confirmed two years later in *Iqbal*, is a substantial narrowing of the Rule 12(b)(6) analysis that it previously applied.  *See, e.g.,* Arthur R. Miller, *From Conley to Twombly to Iqbal: a Double Play on the Federal Rules of Civil Procedure*, 60 DUKE L.J. 1, 17 (2010) (describing the effects of *Twombly* and *Iqbal* on the Rule 12(b)(6) analysis); *Geller v. Von Hagens*, 2010 WL 4867540, at *2 (M.D. Fla. Nov 23, 2010) ("At the outset it should be noted that *Iqbal* and *Twombly* significantly changed the pleading standard required previously.").[4]

*Iqbal* nicely explains how a federal court should analyze a complaint when determining whether it alleges facts sufficient to satisfy the "plausibility" requirement.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 677-79; *accord  Khalik v. United Airlines*, 2010 WL 5068139, at *1-2 (D. Colo. Dec.7, 2010).  Furthermore, and most relevant to this lawsuit, "[a] complaint is insufficient if it 'tenders *naked assertions devoid of further factual enhancement*.'"  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557) (emphasis added); *accord Khalik*, 2010 WL 5068139, at *1 (*quoting Iqbal*).

---

[4] All unpublished decisions cited herein are attached to this Motion as Exhibit A.

Courts should begin the *Iqbal*/*Twombly* analysis by flagging those allegations that "are not entitled to the assumption of truth" – *i.e.*, legal conclusions, bare assertions, and merely conclusory statements. *Iqbal*, 556 U.S. at 678. Only well-pled factual allegations may be used "to determine whether they plausibly give rise to an entitlement to relief." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 544 U.S. at 557). Here, once this Court separates the Complaint's well-pled facts from its legal conclusions, conclusory allegations and naked assertions, it should be obvious that Plaintiffs have failed to allege facts sufficient to meet the *Twombly*/*Iqbal* plausibility requirement for the reasons set forth below.

A.    Plaintiffs Fail to Allege Facts that Plausibly Satisfy the Elements of an ADA or Rehabilitation Act Claim.

The elements of a Title II ADA claim are well-established. "To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability,[5] (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007); *accord Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir.1 999). These required elements are identical with respect to a Rehabilitation Act discrimination claim. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010); *see also Jarvis v. Potter*, 500 F.3d 1113, 1121

---

[5] The State does not dispute that Taylor is a qualified individual with a disability, and as such, she meets the first element of the ADA Title II analysis.

(10th Cir. 2007) (noting that the ADA and the Rehabilitation Act generally involve the same analysis). Each of these elements is essential, and failing to satisfy any of them will preclude the claim. *See, e.g., Amirault v. City of Roswell*, 1996 WL 391986, at *5 (D.N.M. July 11, 1996).

To overcome the *Twombly/Iqbal* plausibility requirement, "a complaint still must contain either direct or inferential allegations respecting ***all the material elements*** necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (emphasis added); *accord Sattar v. Holder*, 2012 WL 882401 (D. Colo. March 15, 2012) (*quoting Bryson*). Plaintiffs fail to meet that burden here for numerous reasons.

      B.    <u>Plaintiffs Do Not Allege that Taylor Has Been Denied Access to a Government Service or Program.</u>

          1.    <u>The Complaint Does Not Allege Any Denial of Access.</u>

The first and most fundamental defect in Plaintiffs' Complaint is its failure to allege that Taylor has been denied access to any government program or service as required by the second element of the foregoing ADA analysis. To the contrary, the Complaint is unambiguous that the opposite is true – ***Taylor has participated in the NEMT program without impediment for more than three years***. Plaintiffs acknowledge this fact over and over again throughout the pleading:

- "Beginning in January of 2009, Plaintiff Taylor's attendants began accompanying her for non-emergent medical appointments." (Complt. at ¶ 65.)

- "Plaintiff Caroline Nichole Cooke accompanied Ms. Taylor during the non-emergent medical appointments." (*Id.* at ¶ 66.)

- "Plaintiff Jacob Cooke accompanied Ms. Taylor during the non-emergent medical appointments." (*Id.* at ¶ 67.)

- "During the non-emergent medical appointment trips, Plaintiff Taylor's attendants drove Ms. Taylor to and from appointments." (*Id.* at ¶ 68.)

- "During the non-emergent medical appointment trips, Plaintiff Taylor's attendants assisted Ms. Taylor with transferring in and out of the car." (*Id.* at ¶ 69.)

- "During the non-emergent medical appointment trips, Plaintiff Taylor's attendants assisted her with care needs." (*Id.* at ¶ 70.)

- "Plaintiff Taylor could not have attended these non-emergent medical appointments without the assistance of her attendants." (*Id.* at ¶ 71.)

- "Plaintiff Taylor continued attending non-emergent medical appointments." (*Id.* at ¶ 93.)

- "Plaintiff Taylor's attendants accompanied her to the appointments." (*Id.* at ¶ 94.)

In other words, the Complaint is quite candid that since at least January 2009, Taylor's attendants have accompanied her to doctor's appointments and have assisted her with any care needs arising during that time. There is no allegation that Taylor has missed even a single appointment as a result of her disability-related care needs. What, then, is the program or service for which Taylor has been denied access? Plaintiffs are not asking for Taylor to be given meaningful access to a program or service that previously was denied to her – ***she has had that access for more than three years***. Instead, they seem to want her or her attendants to be paid more for a service that she has continuously received since January 2009. This desire for increased compensation is not a valid basis for an ADA claim.

2.   The Sole Allegation Threatening a Future Denial of Access Is Impermissibly Conclusory, Speculative and Conjectural.

Perhaps anticipating this line of argument, the Complaint contains a single – and conclusory – allegation warning that "[Taylor's] attendants will not continue to drive Ms. Taylor to her non-emergent medical appointments without just hourly compensation." (Complt. at ¶ 123.) This bald prediction cannot overcome the *Twombly/Iqbal* plausibility requirement.

As noted above, the Supreme Court announced in *Iqbal* that "[a] complaint is insufficient if it 'tenders **naked assertions devoid of further factual enhancement**.'"   *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557) (emphasis added); *accord Khalik*, 2010 WL 5068139, at *1 (*quoting Iqbal*).   Such a lack of "factual enhancement" is readily apparent in this case, especially given the crucial context of Plaintiffs' claims.   *See Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1248 (10th Cir.2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."); *Hill v. Unnamed Arapahoe County Detention Officers*, 2012 WL 899278, at *2 (D. Colo. March 15, 2012) (*quoting Robbins* for the same).   To wit:  Taylor's attendants apparently have accompanied her to non-emergent medical appointments without impediment for more than three years, at least according to the facts alleged in the Complaint.   Yet now Plaintiffs nakedly assert that they will no longer do so.   But why?   What has changed?   What explains the sudden unwillingness?

*Plaintiffs do not say*.   They do not identify any specific event that has caused a change of heart in each of Taylor's attendants to stop providing a service that they have been willing to provide since January 2009.   They do not identify any specific date on which the attendants will stop providing this service.   They do not offer any specific explanation for why the caregivers apparently have abruptly decided to stop providing the service now, more than three years after they began providing it.   They do not specifically allege that Taylor will be unable to procure her required care services from any other providers in the hypothetical case that her current caregivers do, in fact, quit.   In short, Plaintiffs' sole conclusory allegation concerning a future denial of access can only be seen as idle speculation that it is ***possible*** that at some undetermined

time in the future, one or more of Taylor's attendants *might* decide that the compensation paid to accompany her is insufficient, and as a result, stop providing that service – which, presumably, they are still providing at the present – and that Taylor *could* be unable to procure it elsewhere.

The Supreme Court was clear in both *Twombly* and *Iqbal* that such speculative allegations suggesting only a possible future injury are insufficient to satisfy the more restrictive plausibility pleading requirement. *See Iqbal*, 556 U.S. at 677-79 ("But where the well-pleaded facts do not permit the court to infer more than the *mere possibility of misconduct*, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief" (emphasis added).); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief *above the speculative level* on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (emphasis added).).  A recent decision from the District of Colorado also holds that a failure to provide detailed factual allegations concerning the timing, circumstances and rationale surrounding a bare assertion of wrongdoing will be fatal to a complaint.  *See Khalik*, 2010 WL 5068139, at *3 (dismissing a lawsuit claiming that an employer "targeted" an employee based on ethnicity where the plaintiff did not allege when the discrimination occurred, who the perpetrators were, why she believed that her ethnicity motivated the actions in question).

Finally, this result is consistent with other federal decisions outside of the *Twombly/Iqbal* context holding that a plaintiff will lack standing to bring an ADA lawsuit alleging only possible or speculative future discrimination or lack of access.  *See Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001); *Means v. St. Joseph County Bd. of Com'rs*, 2011 WL 4361567, at *4-5 (N.D. Ind. Sept. 16, 2011); *Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 830 (D. Md. 1998); *Hoepfl v. Barlow*, 906 F. Supp. 317 (E.D. Va. 1995).

At the end of the day, Plaintiffs' single naked assertion – without *any* of the factual enhancement or explanation required by *Twombly* and *Iqbal* – that Taylor may be denied access to the NEMT program at some indeterminate point in the future, despite her unfettered access to the program for years without impediment (which likely continues even today), does not plausibly allege facts sufficient to satisfy the second element required for an ADA (and thus Rehabilitation Act) claim.  Their lawsuit should be dismissed in its entirety as a result.

C.  The Purported Inadequacy of a Medicaid Benefit Does Not Constitute Disability-Based Discrimination.

Plaintiffs also fail to meet the second element of the foregoing ADA analysis because the purported insufficiency of a Medicaid benefit for a particular disabled individual cannot constitute discrimination as a matter of law.  Notably, Plaintiffs do not allege that the Department is refusing to pay the normal mileage cost for Taylor's NEMT services; indeed, the Complaint seems to acknowledge the fact that it does.  (Complt. at ¶¶ 78-79, 98.)  Plaintiffs' main objection is that this per-mile rate is not enough to cover Taylor's specific NEMT needs – *i.e.*, that although this compensation might be sufficient for other Medicaid recipients who use private conveyances and are reimbursed on a per-mile basis, due to her specific personal circumstances and care needs, they are insufficient for Taylor.  Therefore, Plaintiffs contend, because the Department is unwilling to make an exception in Taylor's case and augment the mileage reimbursements with additional hourly compensation for her attendants, it is "discriminating" against her.  (*See, e.g.*, Complt. at ¶¶ 103-06, 111-13.)

The main problem with this theory is that it is directly contradicted by longstanding Supreme Court precedent, which holds that Medicaid service limits do not discriminate against

disabled individuals simply because those persons might require more services than an average

recipient by virtue of their disabilities.  *See Alexander v. Choate*, 469 U.S. 287, 302-03 (1985);

*see also Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 726 (10th Cir. 2011).  In

*Choate*, the Supreme Court was confronted with a case involving Tennessee's decision to limit

its Medicaid program to fourteen days of in-patient care.  A number of disabled plaintiffs

challenged this action under the Rehabilitation Act,[6] arguing that their disabilities caused them to

need more than the allotted in-patient days, and thus, the state was discriminating against them

by imposing the limit.  *See* 469 U.S. at 302-03.  The Court flatly rejected that theory.  It held:

> To the extent respondents further suggest that their greater need for prolonged
> inpatient care means that, to provide meaningful access to Medicaid services,
> Tennessee must single out the handicapped for more than 14 days of coverage, the
> suggestion is simply unsound. At base, such a suggestion must rest on the notion
> that the benefit provided through state Medicaid programs is the amorphous
> objective of "adequate health care." But Medicaid programs do not guarantee that
> each recipient will receive that level of health care precisely tailored to his or her
> particular needs. Instead, the benefit provided through Medicaid is a particular
> package of health care services, such as 14 days of inpatient coverage. That
> package of services has the general aim of assuring that individuals will receive
> necessary medical care, but the benefit provided remains the individual services
> offered – not "adequate health care."

*Id.*; *accord Cohon*, 646 F.3d at 726 (noting that the insufficiency of a Medicaid benefit does not

make that benefit discriminatory in violation of Title II of the ADA).

The parallel between *Choate* and the instant case should be clear.  Taylor receives the

same per-mile reimbursement for NEMT expenses as does any other Medicaid recipient

receiving non-brokered services.  Insofar as her personal and specific travel costs exceed that

---

[6] The Rehabilitation Act discrimination analysis has been interpreted to be identical – and thus highly
persuasive – to the ADA analysis.  *See, e.g.*, *Cohon*, 646 F.3d at 724; *Rogers v. Dep't of Health and
Envtl. Control*, 174 F.3d 431 (4th Cir. 1999).

allotment, it is not discrimination for the State to refuse to ignore its NEMT compensation schedule and pay the same mileage costs that it does for any other disabled or non-disabled recipient.  Therefore, Plaintiffs' allegations do not demonstrate any disability-based discrimination on the part of the state, and their Complaint fails the second element of an ADA Title II and Rehabilitation Act claim for this reason as well.

      D.    <u>Any Hypothetical or Speculative Future Denial of Access for Taylor Is Not "by Reason" of Her Disability.</u>

Plaintiffs also fail to sufficiently allege the third required element of an ADA and Rehabilitation Act claim that any denial of access to the government program or service at issue be "by reason" of disability.  *See Robertson*, 500 F.3d at 1193.  In fact, there are many disabled individuals similar to Taylor who utilize the Department's NEMT program.  Taylor herself apparently has accessed these services for more than three years now.

The reason that Plaintiffs claim that Taylor might be denied access to the program at some indeterminate point in the future is not because of her disability – it is because (they assert without explanation) her current caregivers will be unwilling to continue providing the services that they have performed since January 2009 for some unknown and unspecified reason, and Taylor's geographic isolation makes it difficult for her to arrange alternate NEMT transportation.  But neither of those impediments have anything to do with her disability.  Therefore, because any hypothetical or conjectural future denial of access to the Department's NEMT access program should be attributed to reasons other than Taylor's disability, Plaintiffs fail to satisfy the third element of an ADA or Rehabilitation Act claim.

**III.    The Cookes Have Not Alleged an Article III Injury-in-Fact, and Thus They Lack Standing and Their Claims Should Be Dismissed Pursuant to Rule 12(b)(1).**

Finally, the Complaint should be dismissed in its entirety with respect to the Cookes because they lack standing to proceed with the lawsuit.   Federal courts are courts of limited jurisdiction and may only adjudicate "cases or controversies" under Article III of the U.S. Constitution.   *See, e.g., Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008); *Chrisman v. C.I.R.*, 82 F.3d 371, 373 (10th Cir. 1996).   Standing is a critical component of this constitutional case or controversy requirement – it "serves to ensure that the plaintiff is 'a proper party to invoke judicial resolution of the dispute.'"   *Habecke*r, 518 F.3d at 1223 (*quoting Warth v. Seldin*, 422 U.S. 490, 518, 95 S. Ct. 2197, 2215, 45 L. Ed. 2d 343 (1975)).

A crucial part of the standing analysis is that a plaintiff must suffer an injury-in-fact.   *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272 (10th Cir. 2002).   This injury-in-fact is an "invasion of a legally protected interest" that is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical.   *Lujan*, 504 U.S. at 560 (quotations omitted); *accord Habecker*, 518 F.3d at 1223. The injury must be "fairly… trace[able] to the challenged action of the defendant," rather than some third party not before the court.   *Lujan*, 504 U.S. at 560 (quotation omitted); *accord Habecker*, 518 F.3d at 1223-24. Finally, a favorable decision must be likely to provide redress to the plaintiff for the injury. *See Lujan*, 504 U.S. at 561; *Habecker*, 518 F.3d at 1224.

21

Even assuming *arguendo* that a non-disabled plaintiff can ever bring an ADA or a Rehabilitation Act claim,[7] the Cookes' claims must be dismissed in their entirety because they necessarily cannot be injured by the purported violation at issue in this case.  For this Court to conclude that Plaintiffs have adequately pled an ADA or Rehabilitation Act claim, as discussed above, it would need to (erroneously) determine that the single conclusory assertion that the Cookes will cease accompanying Taylor to her medical appointments if they are not paid an hourly wage in addition to the per-mile costs, notwithstanding their longstanding willingness to perform this service and the lack of any explanation for their now-professed change of heart, is a sufficient factual allegation to satisfy the *Twombly* and *Iqbal* plausibility requirement.

But if the Cookes stop accompanying Taylor to her appointments, how could they be injured by the Department's failure to pay them more money?  They would not be entitled to ***any*** compensation in that case, much less hourly wages on top of mileage reimbursement.  Either the Cookes will continue to provide the relevant services (as the Department and Executive Director suspect), in which case there will be no ADA or Rehabilitation Act violation for ***anyone***, or they will stop providing the services, in which case they will not have standing.

---

[7] The question of a non-disabled person's standing to pursue an ADA claim is an unsettled issue in the Tenth Circuit.  However, the majority rule in other circuits – which has been adopted by at least one judge in the District of Colorado – is to construe the ADA as granting the maximum jurisdiction that is constitutionally allowable, thus permitting lawsuits by non-disabled plaintiffs who have been injured by the discrimination in question.  *See Barber v. Colo. Dep't of Revenue*, 2006 WL 469021, at *2 (D. Colo. Jan. 4, 2006) (discussing and adopting majority rule).

## <u>CONCLUSION</u>

The State reiterates its request that this Court grant this Motion and dismiss Plaintiffs'

Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for

lack of subject matter jurisdiction and failure to state a claim.

Respectfully submitted this 19th day of April, 2012.

JOHN W. SUTHERS
Attorney General

Original signature on file at the Office of the Attorney
    General, State of Colorado

*s/JOSHUA G. URQUHART*
JOSHUA G. URQUHART*
Assistant Attorney General
JENNIFER L. WEAVER*
First Assistant Attorney General
Health Care Unit
State Services Section
Attorneys for Defendants

1525 Sherman Street, 7th Floor
Denver, Colorado  80203
Telephone:  (303) 866-5142/5136
FAX:  (303) 866-5671
E-Mail:  josh.urquhart@state.co.us
         jennifer.weaver@state.co.us
*Counsel of Record

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on April 19, 2012, I electronically filed the foregoing DEFENDANTS' RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Kevin W. Williams
Andrew C. Montoya
Colorado Cross-Disability Coalition
655 Broadway, Suite 775
Denver, CO 80230

kwilliams@ccdconline.org
amontoya@ccdconline.org

                    s/Tom Bovee

                    _____

                    Tom Bovee, Legal Assistant